NATHANIAL C. BLACKER,                    Case No. 1:08-cv-874

            Plaintiff,                    Barrett, J.
                                          Bowman, M.J.

      v.


LORA SATTERTHWAITE,

            Defendant.


## REPORT AND RECOMMENDATION

      Pursuant to local practice, this *pro se* prisoner litigation has been referred to the

undersigned magistrate judge for review and a Report and Recommendation concerning

pending motions.  Both parties have moved for summary judgment (Docs. 54, 64).  In

addition, Plaintiff has filed two discovery related motions (Docs. 61, 62).

      Having completed my review of the record, I conclude that Defendant's motion for

summary judgment should be granted, and that Plaintiff's motion should be denied.

Plaintiff's non-dispositive discovery motions will be denied as moot by separate order.  In

addition, based upon Plaintiff's prior litigation, any attempt by Plaintiff to file an *in forma*

*pauperis* appeal of the dismissal of this case would be barred by 28 U.S.C. §1915(g).

## I.  Procedural and Factual Background

      Plaintiff Nathanial Blacker is currently an inmate at the Southern Ohio Correctional

Facility, but was previously confined at the Warren Correctional Institution (WCI) in

Lebanon, Ohio.  On December 19, 2008, Plaintiff initiated this lawsuit by filing a motion to

proceed *in forma pauperis* and attaching a tendered complaint against four WCI employees. On January 9, 2009, three of the originally named defendants were dismissed on grounds that Plaintiff's complaint failed to state a claim against them. Plaintiff's claims against a fourth official, WCI Unit Manager Lora Satterthwaite (hereinafter "Defendant"), were permitted to proceed. (Doc. 4). On July 16, 2010, Plaintiff filed an amended complaint, to which he attached supporting documentation. (Doc. 32).

The facts underlying Plaintiff's complaint began with his written request to Defendant on February 20, 2007 for a "racial separation" from his three cellmates, based on the assertion that he has "racial tattoos" and that "celling me outside my race puts my life in danger." (*See* Doc. 32-1). Defendant Satterthwaite responded by stating "you need to provide far more information than the above. Please give all of the reasons in detail, not just having tattoos before you'll be considered"). (*Id.*; *see also* Doc. 64-1 at 2-4). Plaintiff provided no specific additional information to Defendant in response to her denial of his request. (Doc. 64-1 at 2, Satterthwaite Affidavit at ¶ 7). Plaintiff also did not file any requests to be placed into protective custody either in February 2007 or at any other time while incarcerated at WCI.

Eight months later, on October 23 and 24, 2007, Plaintiff notified Defendant, by verbally informing both WCI Sgt. Harold Dunn and Defendant that "serious racial tensions" existed between Plaintiff and his cellmates, and that if a "cellmove" was not effected, a "serious altercation was likely to occur." (Doc. 32 at 5-6; Doc. 54 at 11-12, Blacker Affidavit). On October 24, 2007 Plaintiff allegedly repeated his verbal request for a cell move, but again Defendant refused the request. (*Id.*). Plaintiff alleges that each time he

verbally requested a cell move from shift "regulars," he was advised that he needed to contact Defendant. (*Id*.). Plaintiff alleges that as a result of Defendant's refusal to move him to a different cell, an altercation occurred in which Plaintiff sustained physical and mental pain, including "multiple abrasions to the head and neck, lacerations ... below and above the right eye [and a] small cut to right pinky finger," all of which have resulted in "scars and permanent disfigurement." (Doc. 32 at 7).

Neither the fact of the altercation nor Plaintiff's resulting injuries are disputed by Defendant.[1] However, in her motion for summary judgment, Defendant offers evidence that the fight occurred when Plaintiff "unilaterally attacked fellow inmate Ryan Waller with a deadly weapon, and stabbed Inmate Waller in the chest with a 7 inch shank." (Doc. 64 at 2). The incident occurred not in the inmates' cell, but in a common area called the "Dayroom." Plaintiff was subsequently convicted by WCI's Rules Infractions Board ("RIB") for causing physical harm to another with a weapon.[2] In addition to his RIB conviction in connection with the assault, Plaintiff was indicted and convicted by a jury in the Warren County Court of Common Pleas on one count of felonious assault and one count of possession of a deadly weapon while under detention. *See State v. Blacker*, 2009 WL 3350404, 2009-Ohio-5519 (Ohio App. 12 Dist. Oct. 19, 2009)(remanding for new trial) and *State v. Blacker*, 2011 WL 3443562, 2011-Ohio 3916 (Ohio App. 12 Dist. Aug. 8,

---

[1]At times, Defendant refers to the date of the assault as September 24, 2007. However, elsewhere in her memoranda Defendant acknowledges the date as October 24, 2007. Records submitted by the parties also indicate that the date of the assault was October 24, leading to a conclusion that Defendant's brief reference to September is a typographical error.

[2]Defendant's motion for summary judgment argues that Plaintiff made a statement at his RIB hearing threatening to kill any black person he was celled with "even if it is 10 years down the road." The affidavits purporting to reference Plaintiff's statement do not contain the referenced quotation; therefore, the Court has not considered the alleged statement. (*See* Doc. 64 at 4).

2011)(conviction affirmed after retrial). Plaintiff was sentenced to a term of 10 years, to run consecutive to his original sentence for aggravated robbery. (Doc. 64-3)

In November, 2007, Plaintiff filed an informal complaint complaining about Defendant's refusal to grant him a cell move. Plaintiff alleges that he subsequently filed a formal grievance and appealed the denial of that grievance concerning the alleged misconduct by Defendant. Plaintiff has attached a copy of a written grievance form as an exhibit in opposition to Defendant's motion for summary judgment, and in support of his own motion. (Doc. 67 at 17; Doc. 68 at 17). In his grievance, Plaintiff complains that:

> [I]nmate Blacker was forced to cell in housing Unit 2D, Cell 164, a four (4) man cell with two (2) "Blacks" and one "Mixed" inmate. This clearly put his life in danger and *forced inmate Blacker to cause physical harm to one of the individuals* in his cell.

(*See* id., emphasis added). The institutional response to the grievance states (erroneously) that Defendant Satterthwaite denied that Plaintiff had made any request for a racial separation prior to the assault. (*Id.*). However, the institutional response additionally reflects that the Warden granted relief on the grievance, insofar as he granted Plaintiff's request for a cell transfer after the assault.

As an attachment to his motion for summary judgment, Plaintiff has filed an affidavit in which he reiterates that between the denial of his initial written request for a racial separation in February 2007 and October 24, 2007, he "made several verbal requests" to Defendant for a "racial separation." (Doc. 54 at 11). Plaintiff's motion also includes as an exhibit affidavits from two fellow inmates, both of whom attest that Plaintiff sent a written "kite" to Defendant in February 2007 requesting a "racial separation"and that he made subsequent verbal requests for the same relief. (Doc. 54 at 14-16).

## II. Analysis

Defendant's motion for summary judgment seeks judgment in her favor based upon four distinct grounds: (1) the foreclosure of relief because Plaintiff's claim amounts to an attack on his conviction; (2) the failure of Plaintiff to prove either the objective or subjective components of an Eighth Amendment violation; (3) the failure of Plaintiff to prove causation between the alleged unconstitutional conduct and his injuries; and (4) the inability of Plaintiff to overcome the defense of qualified immunity. Defendant's first argument entitles Defendant, at most, to partial judgment. However, the latter three grounds asserted entitle the Defendant to judgment as a matter of law on all claims; therefore, Defendant's motion should be granted in full.

Plaintiff's motion for summary judgment advocates for judgment in his favor based upon case law from other jurisdictions, and the undisputed facts that: (1) Plaintiff requested a racial segregation and that he not be celled with "non-Cuacasoid" [sic] inmates; (2) Defendant denied that request; and (3) Plaintiff was injured as a result of a fight between himself and a non-Caucasian cellmate. As is explained below, the case law cited by Plaintiff is distinguishable, and the undisputed facts alleged by Plaintiff do not lead to judgment in his favor; therefore, Plaintiff's motion should be denied.

### A. Arguments Presented in Defendant's Motion

### 1. Collateral Attack on Conviction

Defendant first argues that granting Plaintiff his requested relief would undermine the validity of his RIB conviction and his criminal conviction, in violation of the principles of *Heck v. Humphrey*, 512 U.S. 477 (1994)(Plaintiff's claim for damages is not cognizable under 42 U.S.C. §1983 if a judgment in his favor would "necessarily imply" the invalidity of

his conviction or sentence, unless he can demonstrate that the sentence or conviction has previously been invalidated).

Although examination of Plaintiff's complaint finds no plea for relief relating to his state criminal conviction, a small portion of the complaint could be construed as seeking to overturn Plaintiff's RIB conviction. (*See* Doc. 32 at 8, seeking "[r]emoval of any and all violent indicator status, including but not limited to any R.I.B. incident reports [and] convictions"). However, Plaintiff arguably abandons any collateral attack in response to Defendant's motion, when he explains that he does not seek to overturn his conviction, but instead only challenges the Defendant's deliberate indifference to his safety. Moreover, the Supreme Court has held that *Heck* is not automatically implicated by a suit that impacts a conviction in a prison disciplinary proceeding, absent evidence of the impact on the length of a prisoner's sentence. *See Muhammad v. Close*, 540 U.S. 749 (2004)(holding that *Heck* does not apply categorically to prison disciplinary proceedings).[3] Defendant does not argue in this proceeding that Plaintiff's RIB conviction impacted the duration of his confinement. *But see Bell v. Wilkinson,* 145 Fed. Appx. 169, 170 (6th Cir. 2005)(distinguishing *Muhammed* based upon conclusion that prisoner's RIB convictions impacted duration of his confinement under Ohio law).

In any event, the bulk of Plaintiff's complaint does not amount to a collateral attack on his conviction. It is beyond dispute that a convicted criminal can sue under 42 U.S.C. §1983 for excessive force or for deliberate indifference to his serious medical needs without undermining his otherwise lawful conviction. Likewise, Plaintiff may pursue relief

---

[3]Defendant cites a 2003 unpublished case and *Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000) for the opposite conclusion, failing to recognize that those cases were expressly overruled by the Supreme Court in *Muhammad v. Close*.

on a claim of deliberate indifference to his safety without disturbing his underlying convictions for offenses he committed *after* allegedly having been placed in unreasonably dangerous prison conditions.

### 2. Objective and Subjective Elements of Failure to Protect Claim

In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the Supreme Court held that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" under the Eighth Amendment. Thus, a prisoner can show a violation of the Eighth Amendment if he proves both an objective and subjective component of a "failure to protect" claim. First, under the objective component of the claim, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm" *id.*, 511 U.S. at 834. Second, under the subjective component, the court examines the defendant's state of mind to determine whether he acted with "deliberate indifference" equivalent to an intent to punish inmate health or safety. *Id.; see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). To establish the subjective component, a plaintiff must show that the defendants had knowledge of and disregarded an excessive risk to his safety. *Id.* at 837. On the facts presented, Defendant persuasively argues that Plaintiff can prove neither the objective nor the subjective component of a failure to protect claim.

### a. Objective Element - Substantial Risk?

As proof of the objective component of his claim, Plaintiff argues that he was subjected to a "gladiator like scenario" which should have prompted Defendant to "abate the situation" through a cell change. (Doc. 68 at 2). Plaintiff repeatedly argues that he was forced "to participate in the gladiator like scenario, created by the Defendant" by virtue of

Defendant's decision to house him with inmates of a different race.  (*Id.*).

Contrary to Plaintiff's apparent belief, the mere fact that inmates of different races are housed together does not constitute proof of objectively dangerous conditions that would pose a substantial risk of serious harm.  It is incontrovertible that "corrections officials retain broad discretion over the administration of prisons, including housing in general and cell assignments in particular." *Quick v. Mann*, 170 Fed. Appx. 588, 590 (10th Cir. 2006)(citing *Bell v. Wolfish*, 441 U.S. 520, 540 n. 23 (1979)).  For obvious reasons, courts have widely rejected any notion that a prisoner has any constitutional right to choose his cellmate.  *See Murray v. Bledsoe*, 650 F.3d 246 (3rd Cir., 2011)(*per curiam*); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993); *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984).  This truism holds even if a plaintiff's cellmates are "annoying, offensive, strange, rude," or otherwise undesirable as living companions.  *Dunbar v. Caruso,* 2011 WL 3474004 (E.D. Mich., July 12, 2011)(quoting *Blue v. Knowlin*, 2009 WL 2843315, at *4 (D.S.C. Aug. 31, 2009)).  Certainly, prison officials ordinarily cannot be faulted for refusing to segregate prisoners on the basis of race, since such a policy would subject them to potential liability on other constitutional grounds. *See Johnson v. California*, 543 U.S. 499, 509 (2005)(mandating strict scrutiny review under Equal Protection Clause for racial segregation in prison).

Plaintiff points to a Ninth Circuit case, *Robinson v. Prunty*, 249 F.3d 862 (9th Cir. 2001), as supporting both the objective and subjective components of his claim in this case.  In that case, an appellate court affirmed the denial of qualified immunity to defendants based partly upon a claim by an African-American prisoner that a prison policy of maintaining racially integrated prison yards, despite knowledge of race-based white

8

supremacy gangs, violated the plaintiff's rights. However, in *Prunty* the plaintiff had specifically alleged additional critical facts that the conditions under which he was incarcerated objectively posed a substantial risk of serious harm. For example, he alleged that racial attacks were rampant, and that correctional officers watched a racially motivated attack on him by a Mexican-American inmate for five minutes without attempting to stop it. Soon thereafter, the plaintiff alleged that he was attacked a second time by another Mexican-American inmate, after guards made several jokes about the likelihood of an imminent fight moments before deliberately releasing the Mexican inmate into the yard with him. Based on those facts, the Ninth Circuit concluded that plaintiff's evidence "paints a gladiator-like scenario, in which prison guards are aware that placing inmates of different races in the yard at the same time presents a serious risk of violent outbreaks." *Id.* at 867.

By contrast, even courts in the Ninth Circuit have granted summary judgment in cases like this one, where the plaintiff has failed to submit any evidence of a "serious risk" of imminent harm, or that defendants "predicted or encouraged violent altercations among inmates." *See Estate of Torres v. Terhune*, 2002 WL 32107989 at *9 (E.D. Cal. Jan. 9, 2002). Unlike *Prunty*, Plaintiff's complaint does not include allegations of widespread racial attacks by gangs that created a "gladiator like atmosphere" without fear of discipline by prison officials, nor has Plaintiff offered evidence of prior attacks on Plaintiff like those that occurred in *Prunty*. Even assuming that the Sixth Circuit would fully adopt the Ninth Circuit's analysis,[4] *Prunty* is clearly distinguishable from the case presented.

Again, Plaintiff must show that he was incarcerated under conditions presenting a

---

[4] *Prunty* was decided by the Ninth Circuit prior to the Supreme Court's decision in *Johnson v. California*. Although *Johnson* addressed the racial segregation of inmates in a different context, it illustrates the difficulty of applying any one-size-fits-all rule to the issue.

substantial risk of harm. Here, however, Plaintiff has alleged only that his own personal prejudices against non-Caucasian inmates placed him at risk of confrontation. Although Plaintiff notified Defendant of his aversion to being celled with non-Caucasian inmates and of his generalized concern for his health and safety based upon his "racial tattoos," Plaintiff never alerted the Defendant to any specific threat to his health or safety. In addition, Plaintiff never sought protective custody or administrative segregation at any time between February 20, 2007 and October 24, 2007. *See, e.g. Mosquera v. Delgado*, 2010 WL 2010973 (N.D. Ohio, April 30, 2010), adopted 2010 WL 2010969 (N.D. Ohio, May 20, 2010)(inmate who alleged that he repeatedly told defendants that he feared for his health and safety due to "serious threats and conflict" with gang members did not show incarceration under conditions posing a substantial risk of serious harm; inmate identified only general conflict and failed to ask prison personnel for protection after notifying them of having received a threat).

In order to prove the objective element of his claim, Plaintiff must do more than allege a generalized concern for his safety and welfare. The facts alleged by Plaintiff fall short of the requisite standard because his requests for a "racial separation" expressed no more than a generalized concern that he would be drawn into a confrontation with non-Caucasian cellmates based upon his own prejudice. Not only does Plaintiff fail to allege any pattern of altercations, but there is no evidence that any altercation at all occurred for more than eight months after his initial complaint. *See Curtician v. Kessler*, 2009 WL 2448106 at *8 (W.D. Pa. Aug. 7, 2009)(Plaintiff's claim that Defendants failed to protect him by "forcing" him to share a cell with various black Muslim inmates failed to state a claim in the absence of evidence that risk of serious harm existed "other than the perceived

danger conjured up by Plaintiff's blatant racism."); *see also Lewis v. McClennan*, 7 Fed. Appx. 373, 375 (6th Cir. 2001)(affirming dismissal of claim by African-American prisoner that placing him in large population of white inmates demonstrated deliberate indifference, because at most plaintiff showed no more than a "hypothetical risk of danger to his safety prior to the attack."); *Vinyard v. Evans*, 2008 WL 907381 at *3 (E.D. Mich. March 31, 2008)(inmate alleging failure to protect had no right to be housed with members of own race); *Lindell v. Daley*, 2003 WL 23277280 at *10 (W.D. Wis., Nov. 21, 2003)(Plaintiff had no constitutional right to share a cell with a white cell mate, notwithstanding knowledge by prison officials that Plaintiff did not get along with non-white inmates).

### b. Subjective Element of Claim

For similar reasons, Plaintiff's allegations fall short of showing the subjective element of his claim. To prove the subjective element, Plaintiff must show that Defendant was both aware of the substantial risk, and actually disregarded it. For example in *Prunty*, the court specifically noted that the defendants' "awareness of and indifference to this risk is demonstrated by the alleged frequency with which such outbreaks occur, by the alleged jokes made by the guards to [the plaintiff] before they released" his attacker into the yard with him, and "by the alleged fact that the guards failed to intervene while [plaintiff] was attacked by another inmate." *Id.*, 249 F.3d at 867.

In stark contrast to the clear evidence that the defendants were keenly aware of specific danger to the plaintiff and deliberately disregarded it in *Prunty*, in this case Plaintiff points only to his February 2007 written request for a "racial separation" and occasional follow-up oral requests. However, Plaintiff never provided additional information about any danger, as Defendant requested in February, never sought protective custody or

11

administrative segregation, and never conveyed any specific threat. Moreover, no altercations were ever reported between Plaintiff and his cellmates over many months. Instead, the assault that occurred on October 24, 2007 appears to have been a single, isolated event which Plaintiff initiated.

The written response to Plaintiff's February 2007 request proves that Defendant did not wholly ignore Plaintiff's request for a cell change based upon racial considerations, but instead asked Plaintiff for additional information. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Although Defendant argues that she was not aware of any "substantial" risk, she also argues persuasively that her response to Plaintiff's request was reasonable given the minimal information provided by Plaintiff.

Given the data known to Defendant as a whole, it was reasonable for Defendant to conclude that a "racial separation" was not necessary. *See Scott v. Odmark*, 107 F.3d 871, 1997 WL 76213 (6th Cir. 1997)(table, text available in Westlaw, affirming dismissal of failure to protect claim where, despite knowledge that cellmates fought when first placed together, it was reasonable for Defendant to assume that inmates could co-habitate when they were able to sustain civility toward each other for a period of five days); *see also Froiseth v. County of La Crosse*, 2006 WL 1236714, at *9 (W.D. Wis., May 1, 2006)("A vague expression of fear unaccompanied by any specifics does not give jail officials the knowledge necessary to support a deliberate indifference claim."); *O'Connell v. Williams*, 241 Fed. Appx. 55, 58 (3rd Cir. 2007)(an inmate cannot establish subjective awareness of serious risk simply by asserting that staff were informed that inmate was not getting along

with other inmates).

### 3.  Failure of Proof of Causation

To succeed under §1983, a plaintiff must show: "1) the deprivation of a right secured by the Constitution or laws of the United States and; 2) the deprivation was *caused* by a person acting under color of state law."  *Simscu v. Emmet County of Dept. Of Soc. Servs*., 942 F.2d 372, 374 (6th Cir. 1991)(emphasis added).  Defendant argues that in this case, Plaintiff cannot possibly prove that she "caused" any harm to Plaintiff, because of the passage of time, the fact that the fight occurred in a common area rather than Plaintiff's cell, and because Plaintiff himself was the instigator of the October 24, 2007 fight with his cellmate.

### a.  The Passage of Time as a Break in Causation

First, Defendant argues that Plaintiff cannot show causation because Plaintiff did not provide her with the information Defendant requested in response to Plaintiff's initial request for a "racial separation" from his cellmates in February 2007.  After Defendant denied Plaintiff's request based upon the inadequate information he first provided, no altercations or incidents occurred for a period of more than eight months, until the incident on October 24, 2007.  Other courts have held that the passage of time can indeed eliminate proof of causation in a failure to protect claim.  *See, e.g., Scott v. Odmark*, 107 F.3d 871 (6th Cir. 1997)(reasonable for Defendant to assume that inmates could co-habitate when they were able to sustain civility toward each other for a period of five days after initial altercation); *Lindell v. Daley*, 2003 WL 23277280 at *10-11 (W.D. Wis., Nov. 21, 2003)(passage of many months since last racial altercation made reasonable officials' assumption that plaintiff did not face any imminent risk of harm).

13

### b. Location of Assault

Defendant also argues that because the incident did not occur in Plaintiff's cell, but instead in a common area where all inmates housed in the dorm may congregate, Plaintiff cannot show that Defendant's denial of the request for a cell change bore any causal relationship to the fight. However, in *Farmer*, the Supreme Court explained that a prison official may not escape liability "by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843. By analogy, when an inmate expresses concern for his safety due to animosity between himself and a cellmate, a prison official should not be permitted to escape liability for a violent attack merely because the cellmate waited until an opportune moment outside the confines of the cell to attack. *Accord, Chasteen v. Jackson*, Case No. 1:09-cv-413, 2011 WL 1598751 (S.D. Ohio, April 28, 2011)(denying dismissal by Defendant Satterthwaite on grounds that plaintiff complained of fear of cellmates, but was not attacked within confines of cell).

### c. Plaintiff as the Sole Proximate Cause

Last but not least, Defendant argues that Plaintiff's own actions were the cause of his injuries, citing RIB and state criminal records that show that Plaintiff himself initiated the altercation by stabbing his fellow inmate. As Defendant puts it, permitting Plaintiff's suit to proceed "opens the door for problem inmates such as Plaintiff to take advantage of the Courts by blaming others for their own violent behavior." (Doc. 69 at 1).

Defendant's argument has some initial appeal. Plaintiff's claim amounts to a contention that a prison official can be held liable for failure to protect, if he or she fails to

14

heed a would-be-plaintiff's threat to start a fight. Another district court recently suggested that such a claim is not cognizable in the Sixth Circuit. In *Molina v. Smearsal*, 2011 WL 127158 (N.D. Ohio, Jan. 14, 2011), an inmate was injured when a guard broke the plaintiff's leg while breaking up a fight that the plaintiff had initiated with his cellmate. The plaintiff sued for "failure to protect" on grounds that he had previously requested a cell transfer that the defendants had refused. The district court first determined that plaintiff's claim should be dismissed based on plaintiff's failure to administratively exhaust as required under the PLRA. *Id.* at *3. However, the court went on to explain that even if Molina had exhausted, the claim would fail on the merits because "[t]he fact that Molina instigated the altercation is fatal to his claim." *Id.* The court rejected any claim based upon an allegation that the plaintiff "was forced [to] assault [his cellmate] as a preemptive measure." *Id.* "While prisoners do have a constitutional right to be protected from the violence of other prisoners when there is adequate notice of an impending assault, that assumes that the complainant is the victim, rather than the proximate cause, of the assault." *Id.* Because the court concluded that the claim was subject to dismissal for failure to exhaust, the *Molina* court's subsequent conclusion - that a plaintiff who initiates an altercation cannot bring a failure to protect claim- is dictum. Moreover, as the *Molina* court acknowledged, its analysis that the claim would be barred in the Sixth Circuit is contrary to the Seventh Circuit's analysis in *Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010)(holding that whether the plaintiff threw the first punch is irrelevant to failure to protect claim).

In this case, Plaintiff complied with the procedural requirements of the PLRA by administratively exhausting his claim. Thus, this case squarely presents the question of

whether the Sixth Circuit would recognize a "failure to protect" claim when the person from whom the plaintiff seeks protection is himself. Simply framing the question in such a way yields a quick affirmative answer, at least in some circumstances. For example, prison officials clearly have a duty to protect a suicidal inmate who threatens to harm himself. *See, e.g., Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001)(deliberate indifference to substantial risk of suicide). One can at least conceive of a case in which a prison official might also have a duty to protect a mentally ill homicidal inmate (as well as his or her intended victim), by taking steps to prevent the would-be murderer from carrying out a well-defined plan of attack. The same conceptual analysis presumably might apply even when the would-be murderer does not suffer from any recognizable mental illness.

The difference in this case is that Plaintiff was apparently irritated with his cellmates, but there is no evidence that he had any well-defined or specific plan to act violently against them. Indeed, Plaintiff had exhibited an eight month history of non-violent confrontation over perceived differences with his cellmates, despite his alleged intolerance of racial differences as a declared white supremacist.

In the absence of Sixth Circuit case law, I conclude that no blanket prohibition on a "failure to protect" claim exists in cases where a plaintiff claims injuries resulting from a fight that he instigated with another inmate. Instead, the plaintiff's own conduct is one of several factors to be reviewed in determining causation. In this case, analysis of all relevant factors leads to judgment for the Defendant. Plaintiff was housed with non-Caucasian cellmates for a relatively long period of months without *any* incidents of violence, notwithstanding his February 2007 written complaint seeking a cell change, and subsequent sporadic but non-specific verbal complaints between February 2007 and

October 24, 2007. Given Plaintiff's failure to provide the requested information to Defendant in February 2007 concerning any specific threat, it cannot be said that Defendant's denial of that request was a proximate cause of Plaintiff's altercation more than eight months later. Plaintiff's verbal reiteration of his request, including a day or two prior to the incident, also fail to demonstrate causation on the facts presented. The Defendant's denial of Plaintiff's verbal request shortly before the assault does not lead to a finding of causation, due to Plaintiff's history of non-violence toward his cellmates and non-specific threats. Thus, Defendant's failure to give in to what was reasonably perceived to be no more than Plaintiff's racial prejudice against his cellmates cannot be viewed as a "cause" of Plaintiff's injuries in this case.

### 4. Qualified Immunity

As her last argument in favor of judgment in her favor, Defendant asserts that she is entitled to qualified immunity based upon her discretionary decision to request additional information prior to acting upon Plaintiff's request for a racial separation. The Court agrees.

First, as discussed *infra*, there is no clearly established constitutional right for an inmate to be protected from his own vaguely defined threat to start a fight if not transferred to another cell. Although this Court has concluded that a failure to protect claim can survive evidence that the plaintiff threw the first punch, another district court in this circuit has reached the opposite conclusion. In light of the lack of published case law recognizing a failure to protect claim brought by an inmate who instigates violence, a reasonable correctional officer in Defendant's position would not have known that failing to accede to Plaintiff's demand that he be housed only with Caucasian inmates, and/or Plaintiff's vague

threat that a failure to racially segregate him would result in harm, was a violation of any of Plaintiff's constitutional rights. In addition, Defendant's initial response in February was objectively reasonable, and Plaintiff does not dispute that he never followed up with additional information to support his request for a transfer. (See Docs. 67, 68 at 5, "No additional information or details were ever submitted to the Defendant, that is correct."). Plaintiff's allegations that he verbally reiterated his request for a racial separation over an 8-month period during which no incidents occurred does not give rise to liability, given that he never provided any additional information to support the request.

### B. Arguments Presented in Plaintiff's Motion

Plaintiff seeks the entry of judgment in his favor based upon the undisputed facts that: (1) Plaintiff requested a racial segregation and that he not be celled with "non-Cuacasoid" [sic] inmates; (2) Defendant denied that request; and (3) Plaintiff was injured as a result of a fight between himself and a non-Caucasian cellmate. (Doc. 54). As the Court has already explained, the case law cited by Plaintiff is distinguishable and the undisputed facts alleged by Plaintiff do not lead to judgment in his favor. Accordingly, the Court will not further repeat its analysis in recommending the denial of Plaintiff's motion.

### C. The "Three Strike" Provision of the PLRA

To date, Plaintiff Nathanial Blacker has filed three civil lawsuits in this Court: (1) Blacker v. Moore, Case No. 1:09-cv-337-HJW; (2) Blacker v. Des Maraias, Case No. 1:09-cv-346-SSB; and (3) the instant case, Case No. 1:08-cv-874-MRB.[5] In the first case,

---

[5]PACER court records suggest that Plaintiff may have filed five additional lawsuits while incarcerated in the Middle District of Florida in 2002: Case Nos. 2:2002-cv-439, 2:2002-cv-448, 2:2002-cv-470, 2:2002-cv-471, 2:2002-cv-472. Those cases all involved a prisoner-plaintiff with the same name and an Ohio address. In his first-filed suit in this Court, 1:08-cv-874, Plaintiff stated that he did not know whether he had filed three or more suits previously dismissed as frivolous or for failure to state a claim, with a request

*Blacker v. Moore*, all of Plaintiff's claims were dismissed *sua sponte* by the Court upon initial screening under both 28 U.S.C. §§1915(e)(2)(B) and 1915A(b), for failure to state a claim upon which relief may be granted. (*See* Doc. 4, Order filed 05/26/09). In the second case, *Blacker v. Des Maraias*, the complaint against Defendant Des Maraias was also dismissed *sua sponte* for failure to state a claim, although claims against two other defendants were permitted to proceed. (Doc. 4, Order filed 5/21/09). In the case at hand - Plaintiff's third in this Court - the Court dismissed *sua sponte,* for failure to state a claim, all claims against three additionally named defendants (Crawford, McIntosh and Shoemaker). (Doc. 4, Order filed 1/09/09).

A provision of the Prison Litigation Reform Act, 28 U.S.C. §1915(g), states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id.*

This "three strike" provision was enacted as one of several amendments in the PLRA to prevent prisoners from repeatedly filing frivolous litigation. The provision is strictly enforced, in that courts have upheld its application even to cases dismissed prior to the enactment of the PLRA. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998). In addition, the Sixth Circuit has held that when a portion of a complaint is dismissed with

---

to "please have clerk advise." (Doc. 1 at 7). However, because the Court cannot definitively determine whether the Plaintiff is the same person who initiated the 2002 Florida cases, and in the interest of judicial economy, the Court has not examined the basis for dismissal or otherwise considered the Florida cases for purposes of 28 U.S.C. §1915(g).

prejudice for failure to state a claim, that dismissal qualifies as a strike under §1915(g) even if other claims are <u>not</u> dismissed as frivolous or for failure to state a claim. *See Pointer v. Wilkenson,* 502 F.3d 369 (6th Cir. 2007)(strike counted for claim dismissed for failure to state a claim, even though other claims in the complaint were dismissed without prejudice for failure to exhaust); *but see, e.g., Thompson v. Drug Enforcement Admin*, 492 F.3d 428, 377 U.S. App. D.C. 129 (C.A.D.C. 2007)(action containing at least one non-frivolous claim does not count as strike); *Turley v. Gaetz*, 625 F.3d 1005 (7th Cir. 2010)(same).

Plaintiff has had claims dismissed *sua sponte*, for failure to state a claim, in all three of the cases filed in this Court. Therefore, Plaintiff should be deemed to have "three strikes" against him by this Court for purposes of 28 U.S.C. §1915(g). In any future motion to proceed *in forma pauperis* whether concerning a new complaint or appeal, Plaintiff should clearly note his **full** litigation history in any federal court. A failure to do so is likely to result in immediate dismissal, and may invite additional sanctions. *See, e.g., Horton v. Thomas*, 1996 WL 68013 at *2 (N.D. Ill., Feb. 14, 1996)(Dismissing suit because "[a]n indigent who boldly lies to a judge to gain entry to the courts cannot expect to reap the advantages of cost-free filing no matter what the merits of his suit."); *Walton v. Fairman*, 1993 WL 96427 at *4 (N.D. Ill., April 1, 1993)(dismissing Plaintiff for attempting to deceive the court regarding prior litigation history); *Garland v. O'Grady*, 1988 WL 118879 at *2-3 (N.D. Ill., Nov. 3, 1988)(by failing to list prior lawsuits, inmate "perjured himself"); *see also, generally Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994)(Rule 11 applies to false statements by prisoner regarding litigation history); *Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984)(complaint is malicious if Plaintiff makes false statements with intent to deceive

the court).

### III. Conclusion and Recommendations

Accordingly, for the reasons stated herein, **IT IS RECOMMENDED THAT:**

1.  Defendant's motion for summary judgment (Doc. 64) be **GRANTED**;

2.  Plaintiff's motion for summary judgment (Doc. 54) be **DENIED**;

3.  Based upon Plaintiff's prior litigation history, Plaintiff be deemed to have "three strikes" against him for purposes of 28 U.S.C. §1915(g), and be foreclosed from filing future litigation *in forma pauperis* while incarcerated or detained in any facility unless he is under imminent danger of serious physical injury.

4.  This case be CLOSED and stricken from the active docket.


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

NATHANIAL C. BLACKER,                              Case No. 1:08-cv-874

        Plaintiff,                                  Barrett, J.

                                                              Bowman, M.J.

   v.

LORA SATTERTHWAITE,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).